FILED

2008 Apr-28  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

SYLVIA INGRAM,

     PLAINTIFF,

VS.                          CASE NO.: CV-07-J-1009-NE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

### Procedural Background

The plaintiff applied for disability insurance benefits primarily due to cervical stenosis, a torn rotator cuff, anxiety, degenerative disc disease, and pain in her neck, shoulders and lower back (R. 66, 84-85).  The administrative proceedings leading to this action began on October 12, 2004, when the plaintiff filed an application for disability insurance benefits (R. 84-92).  The  application was denied (R. 25-26, 28-30) and the plaintiff requested a hearing, which was held in front of an administrative law judge (ALJ) on October 31, 2006 (R. 433-466).  The ALJ thereafter rendered an

opinion finding that the plaintiff was not under a disability (R. 11-19).  The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on March 29, 2007 (R. 4-6).  The ALJ's decision thus became the final order of the Commissioner of Social Security.  *See* 42 U.S.C.§ 405(g).  This action for judicial review of the agency action followed (doc. 1).

The plaintiff argues that the ALJ improperly applied the pain standard.  Plaintiff's memorandum at 1.  At the hearing, the ALJ asked the vocational expert a hypothetical which included no limitations from pain (R. 461-462).  When asked to assume the plaintiff's pain was as she testified, namely a 7 to 8 on a scale of 1 to 10 without medication, or 5 to 6 as medicated with side effects from the medication (R. 448), the VE stated that such limitations would interfere with the plaintiff's ability to be productive in a work setting (R. 464).  The ALJ found that the plaintiff could return to her past work as a delivery driver or office clerk (R. 19), finding the plaintiff's allegations of pain to be not entirely credible (R. 17).  The ALJ did not address the plaintiff's allegations of being unable to drive (R. 444), sit or stand for more than ten minutes at a time due to pain (R. 439, 442, 449), and unable to type due to pain (R. 443, 450).

The court has considered the record and the briefs of the parties. For the reasons set forth herein, this case is **REVERSED and REMANDED** to the Agency to further develop the record as instructed herein.

## Factual Background

The plaintiff was born April 6, 1953, and received her GED (R. 435). She was receiving disability retirement from the Postal Service at the time of the hearing due to a rotator cuff injury and other problems (R. 440), having applied for disability with her employer on October 29, 2004 (R. 85). The plaintiff testified that she has cervical stenosis in her neck causing spasms and problems down in her shoulder area, including not being able to lift anything without dropping it (R. 441). She stated that she has herniated discs on the left side of her lumbar area and two bulging discs on the right side, causing her to be unable to lift, twist or turn (R. 441, 447). She underwent surgery on her shoulder in November 2004 which left her shoulder weaker (R. 441). The plaintiff also stated that she has arthritis in her neck (R. 441). She cannot drive due to the medications she takes and because she is unable to sit in the same position for any length of time (R. 442, 444). The plaintiff asserted that she could no longer type because her arms go to sleep and her neck hurts (R. 443). The plaintiff further suffers from facet joint disease and COPD (R. 448).

The medications she takes make her fall asleep and sometimes she will sleep for two to three hours during the day (R. 443).  The plaintiff stated that she cannot work because of pain, that she could perform work but she would pay for it with pain, that she goes to sleep because of the pain medication and it further impairs her judgment and interferes with her ability to concentrate  (R. 445, 449).

Sitting for more than ten minutes causes her hips to hurt very badly, her arms go to sleep if she's typing, she gets muscle spasms in her neck, drawing up her shoulders and arms and causing her hands to go to sleep (R. 450).  She has received epidural shots for the degenerative disc disease and cervical stenosis but she cannot get shots in all the areas that hurt at the same time (R. 452).

The plaintiff has past relevant work as a rural mail carrier, which is medium and unskilled; delivery driver, which is light and unskilled; and office clerk, which is sedentary and semi-skilled (R. 460).  The vocational expert (VE) testified at the hearing that, assuming an individual with the same age, education and prior work experience of the plaintiff, who could perform light work but with limitations of push and pull with the hands to occasionally; no ladders, ropes, or scaffolding; climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling occasionally; limited in reaching overhead to occasionally; and no unprotected heights; such an

4

individual could perform plaintiff's past relevant work as a delivery driver or an office clerk (R. 462).

The court finds the following medical records to be relevant:

A March 2004 MRI of the plaintiff's lumbar spine reflects a lateral disc protrusion at L5-S1, and a mild midline disc protrusion at L4-L5 (R. 128). Disc space narrowing was noted at L1-2, L2-3, and L5-S1 (R. 128). At L5-S1 there was also diffuse disc bulging (R. 128). Lateral disc bulging was also noted at L2-3 and L1-2 (R. 128). An x-ray of her lumbar spine showed degenerative disc disease at L5-S1 (R. 130).

The plaintiff was seen in the emergency room for neck and arm pain and arm numbness in May 2004 (R. 132, 136). Nerve conduction studies of the plaintiff's legs in August 2004 were normal (R. 142). However, nerve conduction studies of the plaintiff's arms the previous month found a chronic, right C7-T1 polyradiculopathy, bilateral minimal median nerve entrapment distal to the wrists (carpal tunnel syndrome), and evidence of a left ulnar mononeuropathy at the elbow (R. 146, 149).

The plaintiff has been treated by Dr. Ted Edwards, D.O., for neck, arm and back pain since April 2004 (R. 202). Upon examination on April 21, 2004, sensation to light touch and pinprick was noted to be impaired in the plaintiff's right arm (R. 203). Her right bicep and tricep strength was 4/5, primary impingement was noted

in both shoulders, and tender points were noted in her right and left occipital regions, cervical regions, trapezius regions, supraspinatus regions, second rib regions, thoracic regions, lumbar regions, sacroiliac joints and hip regions (R. 204). Upon x-ray of her cervical spine mild degenerative joint disease was found at C4-C5 and C5-C6 (R. 204). Dr. Edwards further diagnosed the plaintiff as suffering from rotator cuff syndrome in both shoulders, sacroilitis, thoracic or lumbosacral neuritis or radiculitis, and cervicalgia (R. 204). During an April 24, 2004, follow-up visit, Dr. Edwards added pain in the joint involving pelvic region and thigh, and degeneration of lumbar or lumbosacral intervertebral disc to his assessments (R. 200). He prescribed pain medication and a Kenalog injection (R. 200). An MRI that same date found stenosis, most severe on the right at C4-5, bilateral mild to moderate cervical neuroforaminal stenosis at C5-6 and mild changes on the right at C3-4 (R. 199). Upon return to Dr. Edwards, the plaintiff complained of severe neck pain and contusion of the right hip (R. 197). He noted tender points as before and prescribed more injections (R. 197). Because of positive results from the injections, the plaintiff received them the following two weeks as well (R. 193-196).

In a follow up visit in June 2004 Dr. Edwards noted that the plaintiff complained of low back and right hip pain (R. 191). The same tender points were noted and the plaintiff was given soft tissue massage therapy (R. 191-192). A week

later, the plaintiff's medical records reflect that she believed physical therapy may have made her worse (R. 189).  She received another injection and massage therapy (R. 190).  Further pain medications were prescribed, and Dr. Edwards recommended avoiding overhead activities, lifting no more that 20 pounds, and ice and heat as needed (R. 187-188).

A lumbar myleogram on July 16, 2004, found disc bulges and endplate osteophytes at L1-L2 and L2-L3; very mild ventral extradural defects at L3-L4 and L4-L5; and vacuum disc phenomenon at L5-S1 (R. 183).  A CT further found a very minimal broad-based disc bulge at L5-S1; and very minimal broad-based disc bulges at L2-L3, L3-L4, and L4-L5 (R. 180).  A CT of the cervical spine found degenerative changes and some narrowing of the neural foramina on the right at C4-C5 (R. 178).  An MRI of the plaintiff's left shoulder found potential tendinitis, a mild deformity and degenerative changes (R. 174).   An MRI of her right shoulder found signal abnormality suggestive of tendinitis versus a partial tear (R. 172).

In August 2004 Dr. Edwards' medical findings remained unchanged and he prescribed pain medications and a TENS unit for the plaintiff to use at home for 30-60 minutes every 4-6 hours (R. 170-171).  Further pain medications and injections followed (R. 164-169).  A diagnosis of cervical spondylosis with myelopathy was added and pain in the plaintiff's forearm was noted (R. 164).  Tender points and light

7

touch sensation continued to be impaired (R. 162).  In September 2004 the plaintiff complained of her right arm going numb from her elbow down to the palm of her hand (R. 160).  Her diagnoses at that time included lesion of the ulnar nerve, lateral epocondylitis, and pain in joint involving forearm, as well as the previous diagnoses (R. 160).  The plaintiff received further injections (R. 160-161).  Two days later the plaintiff was seen again because her left hand was turning blue (R. 158).  She had carpal tunnel syndrome added to the list of diagnoses, and Dr. Edwards recommended that the plaintiff avoid having her hands and wrists in the same position and performing the same task everyday; avoid repetitive motion work; and wear a wrist splint at all times (R. 159).  Further injections, massage therapy and pain medications were prescribed (R. 154-157).

Dr. Rhett Murray, upon referral from Dr. Edwards, saw the plaintiff beginning in June 2004 (R. 284-285).  Dr. Murray found that the plaintiff has spondylosis of her cervical spine; he did not see any clearcut radicular pattern and thought some of the plaintiff's problems were musculoskeletal in nature (R. 285).  In November 2004 the plaintiff underwent a left ulnar nerve transposition (R. 224-243, 276, 282-283).  Dr. Murray noted that the plaintiff was seeking disability (R. 283).  He noted that the myelogram revealed degenerative changes in the plaintiff's lumbar and cervical spine without evidence of nerve root compression, and did not recommend any cervical or

lumbar surgery (R. 279).  In December 2004 the plaintiff had further surgery for impingement of her right shoulder with AC joint arthrosis (R. 245-246).  A partial tear of the rotator cuff was noted during surgery, and the plaintiff underwent arthroscopic debridement, subacrominal decompression, and AC joint resection of her right shoulder (R. 245).

In October 2005 Dr. Keith Anderson, D.O., performed nerve conduction studies upon referral from Dr. Rhett Murray[1] (R. 265).  Dr. Murray's notes from September 2005 state that the plaintiff reported no trouble walking, that she had 5/5 strength in all of her muscle groups, and that the prior MRI showed only mild degenerative changes (R. 274-275).  Therefore, he reiterated that he believed her pain to be musculoskeletal in origin (R. 275).  Dr. Murray's records also reflect that the plaintiff complained of neck and shoulder pain which radiated into her right arm and occasionally her left arm (R. 265).  He noted that the plaintiff complained of numbness and tingling in both her hands and that she was dropping things with increasing frequency (R. 265).  The plaintiff further reported that she initially did well after the ulnar nerve transposition, but her symptoms had returned, that she had chronic low back pain with radiation into both her hips and sometimes right leg, and

---

[1]During the hearing, the ALJ commented that, because Dr. Anderson had "D.O." after his name, "[t]o me that's an osteopath" (R. 458).  The plaintiff explained that Dr. Anderson was her comprehensive rehabilitation doctor at the therapy center (R. 458).  The ALJ was apparently unaware that an "osteopath" is a "licensed physician."  *See* 20 CFR § 404.1513(a)(1).

that both her feet develop numbness and tingling, which was getting worse (R. 265). However, the October 2005 nerve conduction studies were normal, thus Dr. Murray referred the plaintiff to a neurologist because he was at a loss to explain the numbness and tingling (R. 272).

Follow-up notes from the plaintiff's shoulder surgery reflect that she still had diffuse tenderness, but Dr. Eric Jansser, M.D., who performed the surgery, stated that he did not have anything else to offer her (R. 389). He noted that she may want to limit her keyboard use and repetitive use of her hand away from her body (R. 389).

The plaintiff is also seen by her family physician, Dr. Michael Honeywell, for a variety of ailments such as skin lesions (R. 287, 329, 335, 351, 355), osteopenia (R. 294-296), anxiety and fatigue (R. 296, 300, 304, 307, 324, 326, 337, 339, 341, 342), hypoglycemia (R. 297), respiratory ailments related to smoking (R. 296, 303, 306, 338, 345), thrush and recurrent yeast infections (R. 291, 299, 304, 321, 339), reflux (R. 299, 300, 339, 341, 349), kidney problems (R. 308), and chronic pain (R. 319, 326, 327A, 330, 331, 335, 336). X-rays in January 2004 found mild scoliosis and degenerative disc disease at L5-S1 (R. 333). In March 2004 Dr. Honeywell's records reflect the plaintiff had neck pain and muscle spasms, which he believed were from degenerative joint disease (R. 327). An MRI at that time found a right lateral disc protrusion at L5-S1 and a mild midline posterior disc protrusion at L4-L5 (R. 328).

Dr. Honeywell noted in September 2004 that he did not believe the plaintiff was disabled based on anxiety and stress, but he had no opinion regarding her orthopedic pain and would defer to her physiotrist regarding her physical limitations (R. 319).

Dr. Honeywell referred the plaintiff to SportsMed for back pain, which was diagnosed as lumbar degenerative disc disease and lumbar radiculitis (R. 397). Dr. Larry Parker, M.D., noted in April 2004 that the plaintiff stated her symptoms are worse with sitting, standing and walking, and reduced by pain medication and manipulation of her spine (R. 397). Good range of motion and full muscle strength were noted and Dr. Parker recommended nonsurgical management and physical therapy for lumbar core strengthening (R. 398). The plaintiff was sent to Dr. Edwards for therapy and pain management (R. 394, 396). In May and October 2004 Dr. Parker's notes reflect that the plaintiff's diagnoses included cervical degenerative disc disease and cervical radiculitis (R. 396). Dr. Parker again recommended nonsurgical management and had the plaintiff continue with Dr. Edwards (R. 393, 396).

The plaintiff was also treated for left knee pain for which she had arthroscopic surgery in October 2005 (R. 390-391). After three months, mild swelling was still noted in the knee, but Dr. Randall Tindell, M.D., who performed this surgery, stated he did not recommend any further treatment and that she could resume activity as tolerated (R. 391).

The plaintiff was again seen at SportsMed in June 2006 for an MRI of her lumbar spine (R. 421). That study found a disc bulge and degenerative facet changes at L5-S1, a small to modest-sized central herniation at L4-5, a small left foraminal herniation at L3-4, and disc bulging and degenerative facet disease at L2-3 (R. 421). Dr. Murray also referred the plaintiff to Dr. Anjaneyulu Alapati, M.D. (R. 429). Dr. Alapati's notes reflect that the plaintiff is treated by Dr. Roberts at "the pain clinic" (R. 429). He recorded that the plaintiff hurt all over her body, and had problems with fatigue, concentration and memory (R. 429). He noted that the plaintiff's right arm and right shoulder hurt, that an MRI of her brain was negative for multiple sclerosis, and that she dropped things from her left hand (R. 426). However, she had normal strength in her muscle groups, normal gait, and could heel toe walk (R. 430). Dr. Alapati sent the plaintiff for a nerve conduction study due to right arm pain and numbness and left leg pain (R. 424). That study was essentially normal (R. 424). In July 2006 Dr. Alapati diagnosed the plaintiff as suffering from cervical disc disease and lumbar disc disease (R. 423). He noted she was getting epidural injections and feeling better (R. 423).

The ALJ found that the plaintiff suffered from degenerative disc disease of the cervical and lumbar spine, degenerative joint disease, status post left ulnar decompression, status post right rotator cuff repair and status post left knee

arthroscopy, which are severe impairments, but none of which, alone or in combination met or equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 13-15).  The ALJ concluded that the plaintiff could perform light work activities, including frequently lifting and carrying ten pounds, sitting for six hours during an eight hour day, with limitations on her ability to perform push/pull movements with her upper extremities, occasionally climb, balance, stoop, kneel, crouch, and crawl, with a limited ability to reach in all directions, and a limit to reaching overhead occasionally (R. 16).  The ALJ opined that while there was evidence of conditions which could produce some of the pain about which plaintiff complained, her allegations of pain were inconsistent with the medical records and that there was no objective medical evidence confirming the severity of the alleged symptoms (R. 17).

The ALJ stated that the medical records show that the plaintiff has not required surgery for any spinal impairment, but rather suffers from musculoskeletal pain (R. 17).  Further, the ALJ noted that because the plaintiff has "sought very little follow up medical treatment" after her shoulder surgery, her "symptoms have abated following surgery" (R. 17).  The ALJ gave great weight to the state agency medical consultants because it was consistent with other evidence of record (R. 18).  The ALJ

gave controlling weight to Dr. Honeywell's statement that the plaintiff did not qualify for disability based on anxiety and stress (R. 18).

### Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work.  If the claimant is successful the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the  correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990).   "Substantial evidence" is more than a scintilla, but less than a preponderance.  It is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206

(1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

In determining whether substantial evidence exists, this court must scrutinize the record in its entirety, taking into account evidence both favorable and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987). "Even if the Court finds that the evidence weighs against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence." *Allen v. Schweiker*, 642 F.2d 799,800 (5th Cir.1981); *see also Harwell v. Heckler*, 735 F.2d 1292 (11th Cir.1984); *Martin v. Sullivan*, 894 F.2d 1520 (11th Cir.1990).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v.  Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993).  However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).   Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper

legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987). When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ determined that the plaintiff had a residual functioning capacity to perform work at the "light" level of unskilled work, apparently based solely on his own hypothetical. However, the hypothetical was insufficient as it failed to include medically imposed limitations. Furthermore, no medical opinion supported the limitations supposed by the ALJ. No opinion regarding plaintiff's

ability to perform light level work appears anywhere in the record before this court.

The sole opinion regarding plaintiff's mental abilities is Dr. Honeywell's statement that he does not believe the plaintiff's anxiety justifies a finding of disability.  Dr. Honeywell stated that the plaintiff's physiotrist would be more appropriate for an opinion regarding the plaintiff's orthopedic pain and her physical limitations.  Regardless of Dr. Honeywell's opinion that the plaintiff's anxiety alone was not disabling, the ALJ had a duty to consider it in combination with the plaintiff's other impairments.  "An ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993), citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987); *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir.1986); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984). The Eleventh Circuit stated, "it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment."  *Id*., quoting *Bowen v. Heckler*, 748 F.2d at 634 (citing *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.1980)).  Here, the ALJ clearly failed to do so.

Further troubling is the ALJ's failure to include the plaintiff's diagnosed and medicated anxiety in the list of "severe impairments," although later in his opinion he states that the plaintiff's mental impairments result in mild restrictions of daily

activity, mild difficulties in social functioning, and mild difficulties maintaining concentration persistence or pace (R. 16).  Any such limitation was absent from the hypothetical posed to the VE as well.  Thus, the hypothetical did not reflect all of the plaintiff's limitations as required.  *See e.g., Smith v. Social Security Admin.*, 2008 WL 879980, 10 (11th Cir.2008), citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("to constitute substantial evidence, the VE's testimony must be based on a hypothetical posed by an ALJ which encompasses all of the claimant's impairments").  Thus, the court finds that the hypothetical to the VE was not sufficient for purposes of establishing that the plaintiff could return to her prior employment.

Dr. Janssen opined that an FCE was needed, but no record of one is contained in the evidence (R. 387).  Dr. Janssen assigned limitations of lifting and carrying 5 pounds occasionally, occasional pushing or pulling, no long distance driving, periodic breaks from a keyboard and repetitive hand motion (R. 387).  No mention of these limitations is made by the ALJ.  Similarly, Dr. Edwards opined that the plaintiff was limited from repetitive hand motions (R. 159).  Any such limitation was not included either in the limitations found credible by the ALJ or in the hypothetical given to the VE at the hearing.

Furthermore, although the ALJ stated he was giving great weight to the state agency medical consultant, that individual opined that "[t]he severity of the alleged functional limitations is found to be credible...." (R. 418). In contrast, the ALJ found the severity of plaintiff's limitations to be something less than what the plaintiff asserted.

The medical evidence established that no medical professional has opined that the plaintiff was exaggerating her pain or malingering. The fact that not all medical impairments can be cured by surgery does not make them any less painful, as suggested by the ALJ's comment that "the [plaintiff] has not required surgical intervention for any spinal impairment" (R. 17). The medical evidence further does not reflect that the plaintiff did not receive follow-up care after her several surgeries, as suggested by the ALJ. Rather, the plaintiff was receiving pain management from Dr. Roberts, routine medical care from Dr. Honeywell, orthopedic care from Dr. Edwards, and further medical care from SportsMed. The court knows of no requirement that an individual return to the very surgeon who performed an operation in order to receive follow up care.[2] In fact, the plaintiff testified she had not returned to Dr. Parker because "I have no reason to unless I desire surgery. He's a surgeon"

---

[2]No explanation as to the lack of records from Dr. Roberts has been given. The ALJ never inquired of the plaintiff as to why these records were lacking. Similarly, although Dr. Janssen referenced the need for an FCE, no inquiry as to whether it was ever done was made by the ALJ.

(R. 457). Additionally, the fact that several doctors have suggested that the plaintiff's pain is musculoskeletal in nature rather than something surgical does not mean that the pain is any less real. However, this is the very conclusion reached by the ALJ (R. 17).

The ALJ apparently ignored any medical record which provided objective medical evidence in support of the plaintiff's subjective complaints of pain. Although the ALJ states that there is no objective medical evidence which confirms the severity of plaintiff's allegations, the court is of the opinion that MRIs, myleograms, CT scans and x-rays are objective medical evidence. Numerous disc bulges, protrusions, degeneration, and spondylosis are well documented by a wide variety of tests on the plaintiff.

When a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, the court must apply a three-part "pain standard," which requires "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain stemming from that condition; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.2002). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. *Id*. See also

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ simply states that the two years of medical records do not confirm the severity of the plaintiff's impairments "for a period of twelve consecutive months" and that he concludes that the plaintiff "does not suffer from degenerative disc disease, osteoarthritis, radicular pain or numbness in her upper extremities, anxiety/depression, or any other impairment to the extent that she can be determined disabled" because of the "lack of evidence of consistent medical treatment for multiple impairments, the lack of medically documented complaints of severe pain despite medication, along with the evidence from the []attending neurologist indicating no evidence of radiculopathy or neurological impingement...." (R. 18). The court finds this statement flies in the face of the extensive treatment records before this court. This court finds an abundance of evidence, detailed above, to support the plaintiff's subjective complaints of pain. This court finds her allegations of pain to be credible. This court considered in support of this conclusion that none of the plaintiff's doctors stated that the plaintiff was exaggerating her back, neck, shoulder or leg pain.

However, the court finds the evidence regarding what the plaintiff could do in the realm of "substantial gainful employment" to be severely lacking. In spite of the

references to the plaintiff receiving disability from her job as a Rural Postal Carrier, there are no medical opinions regarding whether the plaintiff can perform the mental and physical requirements of any other job.  No evidence supports the limitations posited by the ALJ, but there is also not sufficient evidence in the record from which this court can find that the substantial evidence mandates a finding of disability.

The ALJ does not point to any activities of the plaintiff's which would refute her claimed limitations.  Rather, plaintiff's claimed limitations and her daily activities are in line with each other.  The plaintiff testified that her normal day consisted of waiting for her medication to kick in so she could move around, getting dressed which took her several hours because she has to "do a little" then "sit a little," she will try to wash some clothes, sit down and go back to sleep, then her kids and husband come in and try to clean the house and cook while she "supervises" (R. 456).

The Commissioner has a duty to develop a full and fair record.  *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir.1990).  This did not occur in this case.  Sorely lacking from the extensive medical records is any medical opinion as to how the plaintiff's numerous impairments impact her ability to engage in a variety of everyday activities.  This could and should have been addressed through a consultative evaluation or even inquiring of the plaintiff whether the FCE referenced in her medical records was ever performed.  Similarly, Dr. Roberts' records from the pain

clinic should have been obtained.   The plaintiff testified she has been to physical therapy and pool physical therapy at Huntsville Medical Mall, but the record is unclear as to whether this is Dr. Edwards' treatment, the pain center treatment, or some other treatment (R. 457).

This court cannot conclude that the ALJ's finding that the plaintiff can perform her past relevant work is supported by substantial evidence.   Records in evidence at the time the ALJ rendered his decision support a conclusion that the plaintiff does have significant limitations.

The failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.   *Cornelius*, 936 F.2d at 1145-46.   Given the evidence before this court, the court is unable to determine that the proper legal analysis has been conducted.   As such, this court must reverse the decision of the ALJ.   However, the court is unable to conclude from the evidence before it that the plaintiff is completely disabled, or that the plaintiff's past relevant work does not exceed the plaintiff's medically determined limitations.   Therefore, the court will remand this case to the ALJ for further consideration of the evidence, proper application of the law, and any further development of the record deemed necessary for these purposes.

**Conclusion**

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency for further action consistent with this opinion, to include a supplemental hearing with a VE for further testimony and clarification of the medical opinions in the file, including the plaintiff's allegations of pain, limitations from repetitive hand use, and limitations from mental impairments, as found by the ALJ.  If the FCE in question was never performed or cannot be obtained, the defendant should send the plaintiff for a consultative evaluation.

**DONE** and **ORDERED** this the 28th day of April 2008.

_____

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE